**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2339-19

NICHOLAS CORCORAN,

     Plaintiff-Respondent,

v.

JAMES BENNETT,

     Defendant-Appellant.

_____

Argued September 16, 2021 – Decided September 27, 2021

Before Judges Haas, Mawla, and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Docket No. L-0501-17.

Buneka J. Islam argued the cause for appellant (Hornstine & Vanderslice, LLC, attorneys; Beverly McCall and Buneka J. Islam, on the briefs).

Norman W. Briggs argued the cause for respondent (Briggs Law Office, LLC, attorney; Norman W. Briggs, on the brief).

PER CURIAM

Defendant, James Bennett, appeals from a February 11, 2020 order granting plaintiff, Nicholas Corcoran's, motion to vacate the warrant of satisfaction and the stipulation of dismissal.  We affirm.

We discern the following facts from the record.  In 2017, plaintiff made several loans to defendant, the proprietor of a Sea Isle City establishment called the LaCosta Lounge.  This appeal concerns only the last of these loans:  a promissory note executed by defendant on March 6, 2017, promising to repay plaintiff $150,000, along with $15,000 in interest, on or before July 5, 2017 (the loan).  Defendant failed to make any payments toward this note by the maturity date.  On October 25, 2017, plaintiff sued defendant on the note.  Defendant filed his answer on December 11, 2017.

On June 25, 2018, Bennett Enterprises, a corporation whose sole shareholder was defendant, executed a contract to sell the liquor license for the LaCosta Lounge property for $1,000,000 to a corporation named 42nd Place Liquor, LLC.  42nd Place Liquor sought to purchase the property and its liquor license, which were owned by separate entities, to build a hotel on the premises. In addition to seeking to obtain the liquor license from defendant, 42nd Place Liquor had also entered into a contract to purchase the LaCosta Lounge real estate from the owner, To-Glo, Inc.  Defendant, however, already held a right of

A-2339-19

first refusal to purchase the LaCosta Lounge property from To-Glo in the event of a sale. 42nd Place Liquor elected to "pay more for the purchase of the [liquor] license that would go on [defendant's] side in order to avoid any possible litigation and time loss in pursuing the first right of refusal that was on record." The liquor license contract arranged for the closing to occur more than a year later, on September 30, 2019.[1]

Plaintiff filed a motion for partial summary judgment in the amount of $165,000, which the court granted on August 13, 2018. Post-judgment settlement negotiations ensued. Plaintiff "requested a Financial Statement [from d]efendant" and in response defendant generated an "unaudited Financial Statement as of August 20, 2018". . . . (Statement). An accountant's letter included as part of the Statement noted defendant "is responsible for the preparation and fair presentation of the financial statement in accordance with accounting principles generally accepted in the United States . . . ."

---

[1] The record indicates this did not occur, and that due to the alleged machinations of defendant, 42nd Liquor ultimately consented to defendant running the LaCosta Lounge until September 2020. The record sheds no light on what transpired with the property—or the contract—after that date.

A-2339-19

The Statement listed defendant's liabilities as totaling $3,316,556 and his assets equaling $2,559,500. Defendant included among his assets an interest in Bennett Enterprises:

> Bennett Enterprises is a Sub-S Corporation. [Defendant] is the sole shareholder. The sole asset is a liquor license valued at [$]725,000. No goodwill is added to the value of this . . . asset since losses have been reported for a few years from the operation of a restaurant and bar.

However, the Statement made no reference to the $1,000,000 contract defendant had entered with 42nd Liquor, nor did it reference the right of first refusal.

The parties settled for $125,000, and defendant timely paid. On September 6, 2018, plaintiff filed a warrant of satisfaction of judgment and a stipulation of dismissal. Plaintiff subsequently learned, defendant had contracted to sell the liquor license to 42nd Place Liquor for $1,000,000 — $275,000 more than its valuation in the Statement.

On April 8, 2019, plaintiff, now represented by different counsel, filed a motion to set aside the warrant of satisfaction pursuant to R. 4:50-1. Plaintiff certified he only accepted the sum of $125,000 in satisfaction of the $165,000 judgment because defendant fraudulently misrepresented the value of the liquor license in the Statement. Plaintiff argued the $275,000 disparity between the

4

Statement's listed price and the contracted sale price for the license constituted fraud "designed to induce [p]laintiff to accept less than the full amount of the judgment." Defendant averred during oral argument that the difference in the valuations was because the contract also reflected a $275,000 payment for the right of first refusal.

After a two-day trial, the court issued a February 11, 2020 order granting plaintiff's motion to vacate the warrant of satisfaction and the stipulation of dismissal. The court found the Statement contained a material misrepresentation. The court determined it did not matter whether the missing $275,000 related to the value of the liquor license or the Right of First Refusal because in either case defendant improperly concealed $275,000 in assets when preparing the Statement. It reasoned plaintiff would "not have accepted the $125,000 as full and final settlement" had he known defendant stood "to realize another $275,000 in a year on the sale of the liquor license . . . ." As a result, the court vacated the warrant of stipulation and ordered plaintiff to return to defendant the $125,000 previously paid. This appeal followed.

Defendant raises the following issues on appeal:

> POINT I
>
> THE COURT ERRED IN DETERMINING THAT [DEFENDANT] COMMITTED EQUITABLE

A-2339-19

FRAUD.

    a. Legal Standard for Review of [Trial] Court's Decision

    b. Elements of Equitable Fraud at Issue in This Case

    c. The [Trial] Court Abused Its Discretion in Finding That Plaintiff Reasonably Relied on Defendant's Financial Statement.

POINT II

THE [TRIAL] COURT ABUSED ITS DISCRETION IN FINDING THERE EXISTED A MATERIAL MISREPRESENTATION OF A FACT.

    a. The [Trial] Court Erred in Finding a Material Misrepresentation Occurred Based on the Financial Statement, which was Based on Opinion.

    b. The [Trial] Court Erred in Finding that the License Contract with 42nd Place Liquor, LLC Established the Value of the Liquor License.

    c. The [Trial] Court Erred in Finding that the Right of First Refusal was Inaccurate as it Related to Defendant's Financial Position at the Time it was Given to Plaintiff.

"The decision granting or denying an application to open a judgment will be left undisturbed unless it represents a clear abuse of discretion." Hous. Auth. of Town of Morristown v. Little, 135 N.J. 274, 283 (1994). An abuse of

6

discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. I.N.S., 779 F.2d 1260, 1265 (7th Cir.1985)). This court "accord[s] no deference to the judge's interpretation of applicable law, which [it] review[s] de novo." Barlyn v. Dow, 436 N.J. Super. 161, 170 (App. Div. 2014).

A court may overturn a final judgment or order for "fraud . . . misrepresentation, or other misconduct of an adverse party . . . ." R. 4:50-1(c). "In a claim of equitable fraud, a plaintiff must . . . prove: '(1) a material misrepresentation of a presently existing or past fact; (2) the maker's intent that the other party rely on it; and (3) detrimental reliance by the other party.'" Allstate N.J. Ins. Co. v. Lajara, 222 N.J. 129, 148 n.5 (2015) (quoting First Am. Title Ins. Co. v. Lawson, 177 N.J. 125, 136-37 (2003)). "[A] party claiming equitable fraud must prove the required elements by clear and convincing evidence." Daibo v. Kirsch, 316 N.J. Super. 580, 588 (App. Div. 1998).

Guided by these standards, we find no error in the trial judge's decision. First, the Statement contains a material omission. The Statement claims Bennett Enterprises' sole interest was a liquor license valued at $725,000. However, less

7

than two months earlier, on June 25, 2018, Bennett Enterprises contracted with 42nd Liquor to sell the same liquor license for $1,000,000. Despite defendant's knowledge of this contract and his right of first refusal, defendant failed to disclose any of this information in the Statement.

The price in the liquor license contract cannot credibly be dismissed as defendant's opinion because defendant was already aware of its actual, higher value. "Where a seller withholds accurate financial information about [a] business . . . it cannot be said that a purchaser relies upon his own investigation by, in fact, examining falsified records." Walid v. Yolanda for Irene Couture, Inc., 425 N.J. Super. 171, 184 (App. Div. 2012). Thus, defendant should have included the $275,000 right of first refusal as a second asset of Bennett Enterprises, or valued the liquor license at $1,000,000.

Regarding detrimental reliance, the court in Golden v. Nw. Mut. Life Ins. Co. noted the matter centered on whether the party "relied upon its own investigation or to an appreciable degree on the false representation of the [other party]." 229 N.J. Super. 405, 415 (App. Div. 1988). "[T]he law is settled in this State that fraudulent misconduct is not excused by the credulity or negligence of the victim or by the fact that he [or she] might have discovered the fraud by

making his [or her] own prior investigation." Bilotti v. Accurate Forming Corp., 39 N.J. 184, 205 (1963).

Here, the record clearly shows plaintiff relied "to an appreciable degree" on the Statement based on the timeline and the testimony at trial. Golden, 229 N.J. Super. at 415. Plaintiff's original attorney, Larry E. Hardcastle, testified that the Statement formed "a centerpiece of [his] advice [to plaintiff] . . . about the defendant's financial condition . . . ." Hardcastle additionally testified that defendant represented he had various other creditors beyond plaintiff, with whom defendant "had negotiated deals . . . for far less of a percentage than what [plaintiff] was seeking . . . ." Therefore, plaintiff materially relied on the Statement to his detriment in accepting $125,000 instead of the $165,000 awarded to him.

In sum, the court did not err in finding defendant committed equitable fraud and ordering rescission of the settlement agreement. To the extent not addressed, we conclude defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2339-19